Opinión disidente emitida por
la Jueza Asociada Señora Fiol Matta.
Recientemente, reconocimos en In re Pérez Riveiro, 180 D.P.R. 193 (2010), que se viola el derecho al debido proceso de ley cuando se sanciona a un abogado contra quien se ha presentado una querella por actos que, aunque constituyan infracciones a los cánones del Código de Etica Profesio-nal, (1) no se le han imputado en ésta. Esta norma recién pautada constituye un importante avance en la protección de los derechos constitucionales de los miembros de nues-tra profesión involucrados en procedimientos disci-plinarios. El presente dictamen de este Tribunal propone una excepción al citado caso, en aras de agilizar el proceso ante este Foro y de añadir flexibilidad al procedimiento disciplinario. La realidad es que la decisión mayoritaria también abre una brecha peligrosa por la cual se podrán ventilar los casos de forma atropellada. Muestra de ello es, precisamente, este caso. Por entender que la decisión que *834 hoy se emite es un retroceso en la protección del derecho del abogado querellado a preparar adecuadamente su de-fensa, disiento.
El Tribunal fundamenta su decisión de desviarse de In re Pérez Riveiro, supra, en lo resuelto por el Tribunal Supremo federal en Zauderer v. Office of Disc. Counsel, 471 U.S. 626 (1985). En ese caso, el Tribunal Supremo federal hizo una excepción a la norma adoptada en In re Ruffalo, 390 U.S. 544 (1968), al resolver que no se violó el derecho del abogado querellado al debido proceso de ley por el mero hecho de que la teoría utilizada por el Tribunal Supremo de Ohio para sancionarlo distara de la teoría utilizada por la Oficina del Consejo Disciplinario en su recomendación. A esos efectos, el Tribunal Supremo federal expresó que lo importante era que la recomendación del Consejo Discipli-nario sirviera para notificarle al abogado de los cargos (“what is important is that the Board’s recommendations put appellant on notice of the charges he had to answer to the satisfaction of the Supreme Court of Ohio”).(2) Es decir, según el foro federal, lo que importa no es que el tribunal imponga una sanción por un razonamiento distinto al que se utiliza al imputar el cargo, sino que durante la vista disciplinaria el abogado o la abogada sea notificado ade-cuadamente sobre los hechos en los cuales se basan los cargos en su contra.
Conforme a esto, la Opinión mayoritaria, págs. 825-826, razona que “en las instancias en donde el expediente ante la consideración del Tribunal refleje que, en cuanto a la conducta impropia adicional, se le han salvaguardado al querellado todas las garantías que emanan del debido proceso de ley, el Tribunal podrá —si lo estima apropiado— evaluar y atender esa conducta adicional en el mismo pro-cedimiento disciplinario, sin necesidad de referirla al pro-curador general”. (Enfasis suplido.) Según la mayoría, esa excepción se justifica en este caso, ya que la Comisionada Especial incluyó en su informe que la conducta impropia *835 no imputada en la querella fue debidamente identificada y que las garantías constitucionales del licenciado Martínez Almodóvar fueron salvaguardadas en su totalidad durante las vistas.
La realidad es que el caso ante nuestra consideración se distingue claramente de Zauderer y que lo que indica la Comisionada no es correcto. Ambas cosas aconsejan una decisión distinta a la que ha adoptado el Tribunal.
En Zauderer, la querella incluía un cargo por omitir in-formación sobre los honorarios por contingencia en un anuncio publicitario de servicios legales. Según la querella, esa actuación no constituía un anuncio engañoso, sino que omitía información indebidamente. No obstante, y luego de varias vistas, el panel disciplinario determinó que el anun-cio era engañoso, conclusión que adoptó el Tribunal Supremo de Ohio. Ahora bien, los hechos en los cuales se fundamentó la querella para imputar un cargo por omisión eran los mismos que dieron lugar a la conclusión de que el anuncio pagado por el abogado querellado era engañoso. El Tribunal Supremo federal concluyó que, en esas circuns-tancias, el cambio de teoría, de un cargo por omisión a uno por anuncio engañoso, no constituía una “trampa”para en-mendar la querella sin previo aviso al abogado. Por eso entendió que el ratio del caso In re Ruffalo, supra, no aplicaba.
Concluir que se puede aplicar Zauderer al caso de autos es erróneo, pues aquí sucedió algo totalmente diferente. En el caso ante nuestra consideración, la querella imputó al abogado tres cargos relacionados a su función como notario. Estos cargos le imputaron el haber autorizado una escritura pública de compraventa cuando una de las partes estaba incapacitada al momento de la otorgación, haber consignado hechos falsos en la escritura que resultaron en un negocio simulado y no haberse esforzado al máximo en exaltar la dignidad de la profesión y evitar la apariencia de conducta impropia, al consignar hechos falsos en la escritura. Luego de varias vistas, la Comisionada Especial rindió su informe el 13 de diciembre de 2009 y determinó *836 que no se presentó prueba clara, robusta y convincente para concluir que el licenciado Martínez Almodóvar había violado los postulados éticos en los cuales se fundamenta-ban los cargos imputados. Como consecuencia, recomendó que no se sancionara al abogado querellado en cuanto a los tres cargos de la querella.
Pese a ello, la Comisionada Especial entendió que el licenciado Martínez Almodóvar había violado la Regla 5 del Reglamento Notarial de Puerto Rico,(3) supra, al compare-cer como representante legal del comprador contra la persona que tenía la tutela del vendedor incapacitado, en un caso de desahucio posterior basado en la escritura que el abogado querellado había preparado.(4) El informe con-cluyó que aunque “según nuestra opinión no existe prueba suficiente para aseverar otra naturaleza de cooperación entre el notario querellado con [el comprador]; ello crea la fuerte apariencia de que el notario en realidad respondía y defendía los intereses de uno de los otorgantes ...”.(5) Así las cosas, concluyó que el licenciado Martínez Almodóvar violó el Canon 38 de del Código de Ética Profesional,(6) por apariencia de conducta impropia y recomendó que fuera sancionado.
La Comisionada Especial reconoce que estos hechos no fueron imputados en la querella. Concluye, sin embargo, que no hubo violación al derecho del abogado al debido proceso de ley. Sobre este asunto expresó:
El hecho de que específicamente no se haya[n] imputado en el escrito de Querella estas alegaciones; y que sea en estos pro-cedimientos y por esta Comisionada que se haya anunciado y establecido por primera vez en este Informe esta naturaleza de violación informada; en nada viola el debido proceso de ley *837 del querellado. Es un hecho indubitado que durante el curso de los procedimientos las trajimos a colación como hallazgos al examinar los expedientes una vez elevados; y ofrecimos la oportunidad al querellado de impugnar el contenido de las mi-nutas mediante la citación de la secretaria que certificaba las Minutas de instancia', sobre lo cual el Notario querellado no tomó acción alguna, e igual le dimos la oportunidad de expresarse.(7) (Énfasis suplido.)
Para fundamentar lo antes expuesto, el informe de la Comisionada nos refiere a las minutas de las vistas cele-bradas el 14 de abril de 2009 y el 9 de julio de 2009. Sin embargo, al estudiar el expediente no podemos concluir que sea un "hecho indubitado” el que se salvaguardaran los derechos del abogado querellado al debido proceso de ley, sino todo lo contrario. Más allá de que el ratio de Zauderer no aplica en esta instancia, la prueba a la que nos remite el informe no revela que la Comisionada Especial haya to-mado medidas efectivas para proteger el derecho constitu-cional del licenciado Martínez Almodóvar a ser notificado adecuadamente.
Primero, las dos vistas mencionadas no eran en su fondo, sino las conferencias preliminares para pautar los procedimientos, acordar estipulaciones y fijar las teorías de las partes.(8) Además, la primera minuta a la que se refiere el informe, de 14 de abril de 2009, no se encuentra en el expediente. De la segunda minuta, de 9 de julio de 2009, sólo se desprende que “[l\a Comisionada Especial in-dicó que hay un aspecto que surge claro de los autos del caso y surge en dos minutas de las vistas del 16 de noviem-bre de 2001 y el 1ro. [sic] de febrero de 2002. En el caso de desahucio IP2002-0038 y que se refiere a una primera com- *838 parecencia y en una segunda comparecencia del caso, el querellado en desahucio, José A. Cancel Pagán, aparece representado por el Ledo. Melvin Martínez Almodóvar”.(9) (Enfasis suplido.)
Ahora bien, cabe preguntarse, ¿es suficiente una mi-nuta escueta para probar que se salvaguardó durante todo el procedimiento el derecho al debido proceso de ley del licenciado Martínez Almodóvar? Por otro lado, ¿es necesa-rio que surjan claramente del expediente, y de forma me-ridianamente detallada, las medidas tomadas para prote-ger esos derechos? Una excepción a la norma adoptada en In re Pérez Riveiro, supra, debe contemplar estas interro-gantes antes de proponer una solución como la presente. Esto, porque “[t]odo proceso disciplinario se ejecuta en ar-monía con el debido proceso de ley, con arreglo a un proce-dimiento formal mediante el cual no sólo se le informa al abogado de los cargos que operan en su contra, sino que más importante aún, se le ofrece amplia oportunidad para contestarlos y defenderse”.(10)
Este Tribunal tiene la potestad de designar a un Comi-sionado Especial para que reciba la prueba y dirima sobre la evidencia conflictiva,(11) y sus determinaciones tácticas merecen nuestra mayor deferencia.(12) Sin embargo, no po-demos claudicar nuestra responsabilidad como foro máximo de asegurar que ello se lleve a cabo sin lacerar el derecho al debido proceso de ley de los implicados en los procesos disciplinarios. Además, este Tribunal no está obli-gado a aceptar el informe del Comisionado Especial, pu-diendo adoptar, modificar o rechazar tal informe. En este caso no podemos avalar la recomendación de la Comisio-nada de sancionar al abogado querellado cuando del propio expediente no surge claramente que se le haya notificado *839 adecuadamente de la conducta impropia no contenida en la querella que sirve de base para la recomendación.
A todas luces, la opinión mayoritaria deposita su con-fianza en las expresiones del informe. Al hacerlo, trata de forma superficial la necesidad de que el propio expediente revele el fiel cumplimiento del debido proceso de ley du-rante el procedimiento. La realidad es que lo único que se puede constatar del contenido del expediente en este caso es que durante las vistas preliminares se le hizo una men-ción escueta al licenciado Martínez Almodóvar de una con-ducta aparentemente impropia. Más allá de las breves ex-presiones de la Comisionada Especial, no surge del expediente que se le haya expuesto claramente al licen-ciado Martínez Almodóvar que esos actos, no incluidos en la querella, serían añadidos como un cargo nuevo e inde-pendiente para ser considerado en las vistas evidenciarías posteriores. Tampoco refleja que se le haya ofrecido la oportunidad de presentar prueba a su favor respecto a esos nuevos actos durante las vistas evidenciarías posteriores. Ciertamente, la liviandad con la que se atiende este asunto me resulta, como mínimo, alarmante.
El avalar las expresiones de la Comisionada Especial en este caso puede abrir la puerta a que cualquier conducta que tenga un ápice de apariencia de conducta impropia pueda ser incluida sub silentio, o con una mera mención, como un cargo durante un procedimiento ya iniciado. De-bido a la fácil dilución de un término tan amplio e impre-ciso como apariencia de conducta impropia, esta decisión puede poner en jaque la protección del derecho al debido proceso de ley de los abogados y las abogadas que sean sometidos al proceso disciplinario.
En efecto, nuestro dictamen en In re Pérez Riveiro, supra, pretende evitar circunstancias como la presente. En el caso ante nuestra consideración, hay muy poco en el expe-diente que se refiera siquiera al nuevo cargo. Más bien, el expediente se refiere, casi en su totalidad, a los cargos im-putados originalmente en la querella. Por su parte, el in-forme de la Comisionada Especial le dedica a ese asunto *840 tan sólo tres de un total de treinta y seis páginas. Resolver que una simple indicación de que una conducta podría ser sancionable constituye prueba suficiente de una notifica-ción adecuada del nuevo cargo añadido socava nuestro pre-cedente más reciente. Máxime cuando este Tribunal, ante la falta de prueba clara que apoye lo expresado en el in-forme, tampoco proveyó al abogado querellado la oportuni-dad de expresarse sobre este particular.
En conclusión, debido a la incongruencia de los hechos y a la ausencia de prueba en el expediente que sustente de forma adecuada que al licenciado Martínez Almodóvar se le protegió su derecho al debido proceso de ley, no podemos aplicar la norma de Zauderer. Lo que sucedió aquí no fue un cambio en la teoría del Procurador. No surge que el abogado querellado esté avisado aquí, como lo estuvo en Zauderer, de los hechos que dan lugar al cargo imputado. Por lo tanto, la vía más sensata a seguir es la norma tal y como fue adoptada en In re Pérez Riveiro, supra, en el cual se le ordenó al Procurador General investigar la nueva in-formación recibida por la Comisionada Especial para de-terminar si debía presentarse una nueva querella e iniciar un proceso disciplinario separado. Sólo de esta forma se podrá mantener un balance armonioso entre los intereses del querellado y los de nuestra sociedad.(13)
Por lo tanto, en fiel observancia de nuestro deber de regular la profesión jurídica, referiría el asunto concer-niente a la violación de la Regla 5 del Reglamento Notarial de Puerto Rico, supra, y el Canon 38, supra, al procurador general para que estudie los hechos y nos informe si se debe someter una querella para dilucidar la violación ética en su vista correspondiente, cumpliendo así las exigencias del debido proceso de ley.

 4 L.P.R.A. Ap. IX.

 Zauderer v. Office of Disc. Counsel, 471 U.S. 626, 654 (1985).

 4 L.P.R.A. Ap. XXIV.

 “Establecido lo anterior, debemos referirnos ahora a lo que opinamos consiste otra conducta impropia del notario querellado, cuya conducta no está imputada en el escrito de querella, aunque si [sic] se alega por la OGP violación al canon 38, pero por otros motivos.” (Énfasis suplido.) Informe de la Comisionada Especial, 13 de diciem-bre de 2009, pág. 34.

 íd.

 4 L.P.R.A. Ap. IX.

 En cuanto a la oportunidad para expresarse, se deduce del informe que “]n]uestro mejor recuerdo es que el abogado-notario querellado explicó en sala que él compareció a asistir a don José en dicho caso de desahucio porque como ante él se había otorgado la escritura de compraventa, ante una acción de esa naturaleza, don José le pidió que compareciera para acreditar el otorgamiento ... que compareció solamente esas dos veces, más bien para informar al tribunal de San Germán”. Informe de la Comisionada Especial, supra, págs. 34-35.

 En efecto, las vistas evidenciarías, donde se debe hacer valer el derecho al debido proceso de ley, fueron celebradas los días 15,16 y 17 de julio y 19 de agosto de 2009. Informe de la Comisionada Especial, supra, pág. 9.

 Minuta de la Comisión Especial, 9 de julio de 2009, pág. 5.

 In re Ríos Ríos, 175 D.P.R. 57 (2008); In re Sepúlveda, Casiano, 155 D.P.R. 193, 208 (2001). Véase, además, In re Pagán, 71 D.P.R. 761 (1950).

 In re Gordon Menéndez I, 171 D.P.R. 210, 217 (2007); In re Morales Soto, 134 D.P.R. 1012, 1016 (1994).

 In re Soto López, 135 D.P.R. 642, 646 (1994).

 No podemos olvidar que para “un abogado sometido a una querella discipli-naria, su caso es único, personal e insustituible. Representa la esperanza o fracaso profesional inmediato de un ser humano, lo que de por sí exige una profunda re-flexión por el juzgador de todos los elementos presentes”. In re Lavastida et al., 109 D.P.R. 45, 87 (1979), opinión concurrente y disidente del Juez Asociado Señor Negrón García.