EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Adalberto Fernández Díaz | 2007 TSPR 162<br><br>172 DPR _____ |

Número del Caso: CP-2005-16

Fecha: 21 de agosto de 2007

Oficina del Procurador General:

Lcda. Sylvia Roger Stefani
Procuradora General Auxiliar

Abogado de la Parte Querellada:

Por Derecho Propio

Materia: Conducta Profesional
        (La suspensión del abogado advino final y firme el
         día 21 septiembre de 2007)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Adalberto Fernández Díaz                    CP-2005-16

PER CURIAM

En San Juan, Puerto Rico, a 21 de agosto de 2007.

Tenemos la oportunidad de expresamos sobre la extensión y efecto del requisito de juramentación de las quejas que se presentan contra abogados por violar su responsabilidad para con sus clientes. Al hacerlo, rechazamos la recomendación de archivar este caso que nos hace el Comisionado Especial en su Informe, por las razones que exponemos a continuación.

I

El 2 de julio de 2002 el Sr. Ángel L. Félix Medina y la Sra. Antonia Vázquez de Félix presentaron ante este Tribunal una carta,

firmada por ambos, en la que explican, escuetamente, que el Lcdo. Adalberto Fernández Díaz:

> "despues [*sic*] de dos audiencias suspendidas en siete meses no lo hemos encontrado ni visto mas [*sic*]. emos [*sic*] hecho gestiones mas lo emos [*sic*] llamado a residencia ademas [*sic*] emos [*sic*] escrito sin resultado alguno".

La queja fue juramentada al dorso ante una funcionaria de la Secretaría de este Tribunal, pero por sólo uno de los quejosos, el Sr. Ángel L. Félix Medina. Una vez notificada la queja al licenciado Fernández Díaz éste respondió, refiriéndose a "la queja del Sr. Ángel Félix Medina", para aclarar que su cliente no era éste, sino la señora Vázquez. Más allá de eso no expresó reparo alguno por la intervención del señor Félix Medina y procedió a explicar lo siguiente:

> Debemos admitir que hubo una falta de comunicación con la Sra. Antonia Vázquez… **La falta de comunicación es de nuestra exclusiva culpa**… Telefónicamente le he indicado a la señora Vázquez, en términos generales, el estado de su caso y me he comprometido con ella a visitarla… para exponerle en detalles la situación de su caso. Énfasis suplido.

En su primera comparecencia en este caso, titulada Moción informativa y solicitud de orden, el Procurador General señala que el abogado admitió la falta de comunicación con su cliente, la señora Vázquez, situación que según el Procurador es "subsanable". En este escrito y en otros posteriores del Procurador General, incluyendo el Informe que da lugar a la presentación de la Querella, se manifiesta cierta ambigüedad y confusión en cuanto a

la identidad de la parte quejosa. En su Informe el Procurador General expone que "[e]l Sr. Ángel L. Félix Medina presentó una queja… alegando que no logró comunicarse con [el] abogado a pesar de las veces que lo intentó". En otros escritos que obran en autos, sin embargo, el Procurador se refiere claramente a la señora Vázquez como la quejosa en este caso.  También consta en autos una extensa carta firmada por la señora Vázquez y fechada 24 de febrero de 2003 en la que ella explica que ha "perdido la confianza en este Licenciado" y solicita ayuda "para que el [*sic*] renuncie al caso por escrito".

El Informe del Procurador General presentado el 8 de septiembre de 2004, señala, además, que:

> El 24 de junio de 2003, **la demandante, señora Vázquez**, solicitó se relevara como su representante legal al licenciado Fernández, **por ésta no poder localizarlo y por desconocer lo ocurrido en el caso** a nivel de instancia. Surge del expediente que la Lcda. Maribel Rosario asumió la nueva representación legal el 29 de de agosto de 2003.

> Del expediente se desprende que el 26 de junio de 2003, se dictó sentencia sumaria parcial desestimando la demanda contra uno de los codemandados, Pedro Cruz Ayala. **Esta desestimación se debió a la falta de contestación por parte del abogado de la querellante** del requerimiento de admisiones y a la fecha de oposición a que se dictara sentencia sumaria parcial.

> . . .

> El 16 de septiembre de 2003, notificada el 9 de octubre de 2003, el Tribunal de Primera Instancia emitió resolución declarando con lugar la renuncia de representación legal del Lcdo. Adalberto Fernández Díaz. Ordenó que el expediente de la demandante se entregara a la

nueva representación legal de ésta dentro de diez días. Énfasis suplido.

Tras varias prórrogas, el licenciado Fernández Díaz presentó su contestación al Informe del Procurador General y solicitó expresamente el archivo de la queja. En su escrito reitera que quien presentó la queja en su contra fue el señor Félix Medina, puesto que fue él quien la juramentó. Por esa razón solicita nuevamente el archivo de la queja ya que no existió entre el señor Félix Medina y el querellado una relación de abogado-cliente.

En nuestra resolución de 20 de mayo de 2005, **habiendo considerado el planteamiento de derecho del licenciado Fernández Díaz**, instruimos al Procurador General a que presentara querella contra el abogado por violación a los Cánones 18 y 19 de los de Ética Profesional.

Así se hizo el 11 de agosto de 2005. La querella le imputa al licenciado Fernández Díaz violar los mencionados Cánones basándose en las propias admisiones del abogado sobre la falta de comunicación con su cliente y la representación inadecuada de los intereses de ésta que resultó en que se dictara sentencia sumaria desestimando su demanda contra uno de los codemandados.

En su contestación el licenciado Fernández Díaz expresa lo siguiente:

> **Aceptamos la comisión de las violaciones de los Cánones de Ética señalados.**

De esta forma nuevamente y expresamente **admite las violaciones imputadas**. Sin embargo solicita otra vez el archivo del caso por la misma razón expresada en su escrito anterior, a saber, que el Sr. Ángel L. Félix Medina fue quien juró la querella y que éste nunca fue su cliente. Aduce, además, que la demandante "no sufrió daños reales, su causa de acción contra el Municipio se mantuvo y después del trabajo realizado desiste de su reclamación". También expone como atenuante que se graduó *cum laude* de la Facultad de Derecho de la Universidad de Puerto Rico en 1976 y que en treinta años de práctica la presente es la primera querella en su contra.

El 25 de enero de 2006 designamos al ex Juez de Apelaciones, Lcdo. Heriberto Sepúlveda Santiago, como Comisionado Especial. Celebrada a la conferencia con antelación a la vista, el caso se sometió por el expediente. En el Informe con antelación a la vista presentado por las partes éstas reiteran todo lo antes dicho.

Según explicamos antes, el Comisionado Especial recomendó archivar la querella porque la queja que dio inicio al procedimiento disciplinario fue juramentada por el señor Félix Medina, quien no era cliente del licenciado Fernández Díaz. Según el Comisionado, el señor Félix Medina no era parte realmente interesada en el caso con respecto al cual se le imputa al querellado falta de diligencia y no haber mantenido comunicación con su

cliente. Por eso, "[e]l criterio de razonabilidad unido a los imperativos del debido proceso de ley" le llevan a concluir que el señor Félix Medina "no está legitimado para vindicar derechos de una tercera persona que no ha tenido impedimentos para comparecer como querellante".

## II

Como cuestión de umbral debemos examinar si procede el archivo recomendado por el Comisionado Especial. Resolvemos en la negativa. En primer lugar, el Comisionado pasa por alto que este Tribunal ya consideró y adjudicó el planteamiento del licenciado Fernández Díaz. En su contestación al Informe del Procurador General el licenciado Fernández Díaz solicitó el archivo del presente caso por las mismas razones que expuso en su contestación a la querella. Al ordenar que se presentara la querella no obstante dicho planteamiento evidentemente denegamos esta petición. Se trata, pues, de un asunto de derecho previamente adjudicado y resuelto por este Tribunal. Nuestra determinación constituye, por tanto, la ley del caso y así debió resolverlo el Comisionado ante la insistencia del abogado en reiterar la procedencia del archivo por el mismo fundamento.

En nuestro ordenamiento jurídico, es norma reiterada que los planteamientos que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la Ley del caso. *In re: Tormos Blandino*, 135 D.P.R. 573, 578 (1994). Según esta

doctrina, generalmente las determinaciones y asuntos decididos y considerados por un tribunal, en particular por un foro apelativo, obligan tanto a un tribunal inferior como al que las dictó e impiden que puedan ser reexaminados. Estos asuntos y dictámenes gozan de finalidad y firmeza con arreglo a esta doctrina. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987); Secretario del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967). En aras de velar por el trámite ordenado y pronto de los litigios y promover la estabilidad y certeza del derecho, la doctrina de la Ley del caso tiene como propósito el que los tribunales nos resistamos a reexaminar estos asuntos ya considerados dentro de un mismo caso. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 222 (1975).

Claramente, no se trata de una regla férrea ni de aplicación absoluta y por eso se puede descartar si conduce a resultados manifiestamente injustos. Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992). En situaciones excepcionales, si un caso, mediante los mecanismos apropiados, vuelve ante la consideración de un tribunal y éste entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, puede entonces aplicar una norma de derecho distinta. Félix Taveras v. Las Haciendas, S.E., 2005 T.S.P.R. 146; Noriega v. Gobernador, supra, pág. 931. No estamos, sin embargo, ante una situación de esa naturaleza.

El requisito de juramentación de la queja, contenido en la Regla 14(b) de nuestro Reglamento no dispone quién viene llamado a hacerlo.[1] El Comisionado Especial concluye que cuando la queja se basa en incumplimiento del abogado con sus deberes para con sus clientes, no la puede juramentar "cualquier ciudadano". Infiere entonces que una queja que impute violación a las obligaciones de un abogado o de una abogada en su rol como representante legal sólo puede ser juramentada por quien, en efecto, es o fue su cliente, por imperativo del debido proceso de ley.

Como cualquier norma general, el requisito de juramentación de una queja debe interpretarse de acuerdo a los hechos particulares de cada caso, con miras a adelantar el propósito del proceso disciplinario salvaguardando, claro está, los derechos del abogado o abogada a quien se imputa la violación ética. No se trata de un requisito de naturaleza jurisdiccional, más bien es uno de cumplimiento estricto cuyo fundamento es desalentar la presentación de querellas frívolas que

---

[1] Cualquier queja escrita y bajo juramento que se reciba por el Tribunal o por cualesquiera de sus Jueces respecto al comportamiento de un(a) abogado(a) o de un(a) notario(a) será debidamente anotada por el (la) Secretario(a) en el registro especial correspondiente que llevará a esos efectos. No se anotará ni practicará asiento alguno sobre queja sin jurar, o carente de suficiente especificación de hechos en que se funde. 4 L.P.R.A. Ap. XXI-A, R.14.

pongan en riesgo la reputación y el buen nombre del abogado.[2]

No existe tal riesgo en el caso que hoy resolvemos. Primeramente, se no trata de una queja no juramentada. Tampoco podemos calificar al señor Félix Medina, con respecto a los hechos alegados, como "cualquier ciudadano". El primer documento que obra en autos, firmado por la señora Vázquez y por su esposo, el señor Félix Medina revela claramente que no son personas duchas en Derecho. No es de extrañar entonces que por desconocimiento los esposos comparezcan juntos y que tras firmar la carta ambos sea uno sólo de ellos, el marido, quien juramente el documento. A poco que se examine el expediente del presente caso resulta evidente que la cliente del licenciado Fernández Díaz, la Sra. Antonia Vázquez, ha comparecido de manera clara y contundente para exponer su posición. Más aún, en un documento posterior la señora Vázquez comparece sola y expone con mucha claridad sus alegaciones contra el licenciado Fernández Díaz, **alegaciones que éste en varias ocasiones admite y acepta.**

No vemos, en este contexto, razón alguna para variar nuestra determinación anterior respecto a la solicitud de archivo del procedimiento. Por ello, habiéndose sometido

---

[2] Respecto al requisito de juramentación de querellas véanse: En el asunto de la investigación en torno a Juan Cruzado Laureano, 2003 TSPR 21; *Pueblo v. Rodríguez Santana*, 146 D.P.R. 860 (1998); *Pueblo v. Rexach,* 130 D.P.R. 273 (1992).

el caso por el expediente y no habiendo hechos en controversia tampoco es necesario devolver el caso al Comisionado Especial.[3] Por el contrario, estamos en condiciones de adjudicar.[4]

III

Según expone la querella presentada por el Procurador General:

> A septiembre de 2002 el caso civil, para el cual el licenciado Fernández había sido contratado, estaba pendiente. En su contestación a la queja, Fernández **admitió que hubo falta de comunicación con la señora Vázquez y que la misma se debió exclusivamente a él**. Según Fernández, éste atravesó por un proceso duro de divorcio, luego del cual tuvo que irse a residir a San Germán, lo cual, según él, dificultó la comunicación debido a la distancia.

> Fernández señaló que en septiembre de 2002, se había comunicado por teléfono con la señora Vázquez para indicarle el estado de su

---

[3] Respecto a la función del Comisionado Especial, véanse: *In re:* Rodríguez Feliciano, 2005 T.S.P.R. 130; *In re:* Ortiz Brunet, 152 D.P.R. 542, 548 (2000; *In re:* Gordon Menéndez, 2007 T.S.P.R. 108; In re Rodríguez Feliciano, *supra*; *In re:* Ríos Rivera, 147 D.P.R. 140, 143 (1998); *In re:* Morales Soto, 134 D.P.R. 1012, 1016 (1994). En cuanto a nuestra facultad para adoptar, modificar o rechazar el informe del Comisionado y los criterios que tomaremos en consideración, véanse, *In re:* Gordon Menéndez, *supra*; *In re:* Semidey Morales, 151 D.P.R. 842, 844 (2000); *In re:* Moreira Avillán, 147 D.P.R. 78, 86 (1998); *In re:* Soto López, 135 D.P.R. 642, 646 (1994; *In re:* Rodríguez Mercado, 2005 T.S.P.R. 144.

[4] Ante las admisiones del Lcdo. Fernández Díaz este Tribunal pudo haber resuelto el presente caso sin necesidad de otros procedimientos, según dispone la Regla 14(e) del Reglamento del Tribunal Supremo, que en lo pertinente:

> "El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando de la propia contestación surjan hechos que lo justifiquen".

caso y que él se había comprometido con ella a visitarla el 14 de septiembre de 2002 y/o el 21 de septiembre de 2002, para exponerle en detalle la situación del caso. **El expediente no demuestra si esta gestión se materializó o no. En junio de 2003, la señora Vázquez trató de comunicarse con su abogado, mas no fue posible.** Esto ocasionó la solicitud por parte de ella del relevo de representación legal el 24 de junio de 2003. Para agosto de 2003, la señora Vázquez contaba con una nueva abogada, la Lcda. Maribel Rosario Cartagena.

Del expediente se desprende que, en el caso para el cual la licenciada Vázquez había contratado al querellado, el 26 de junio de 2003, se había dictado sentencia sumaria parcial desestimando la demanda contra uno de los co-demandados, Pedro Cruz Ayala. **Esta desestimación se debió a la falta de contestación por parte del abogado de la señora Vázquez, licenciado Fernández, al requerimiento de admisiones y a la falta de oposición a que se dictar sentencia sumaria.** (Énfasis suplido).

No hay duda que el licenciado Fernández Díaz violó los Cánones 18 y 19 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C.18 y 19, según él mismo acepta. Al no mantener informada a su cliente sobre los pormenores de su caso ni mantener comunicación con ésta violó el Canon 19 que impone este deber específicamente. Además, su conducta de no contestar el requerimiento de admisiones ni oponerse a la moción de sentencia sumaria violó el Canón 18, en cuanto éste dispone:

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. 4 L.P.R.A., Ap.IX, C.18 y 19.

Hemos recalcado en innumerables ocasiones que los abogados y las abogadas tienen el deber de atender los intereses de su cliente con la mayor diligencia, celo y cuidado. Un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía y no mantiene a su cliente informado de los desarrollos del caso incurre en violación seria de los cánones de ética profesional. In re: Rodríguez Villalba, 160 D.P.R. 774 (2003); *In re: Arroyo Rivera*, 148 D.P.R. 354 (1999).

La incomparecencia de un abogado a las vistas señaladas por un tribunal, su incumplimiento con las órdenes judiciales y su falta de diligencia en la tramitación del caso constituyen conductas irresponsables que violan el Canon 18 irrespectivamente de las razones que lleven al abogado o abogada a incurrir en esa conducta. *In re: Grau Díaz*, 154 D.P.R. 70 (2001).

Cabe reconocer que el licenciado Fernández Díaz actuó seria y responsablemente al admitir que había violado los Cánones 18 y 19 de Ética Profesional. En su contestación a la querella aduce como atenuante que su actuación no perjudicó a su clienta pues aunque se desestimó la causa de ésta contra uno de los codemandados, el caso continuó

contra el demandado principal, el Municipio de Cayey, hasta que eventualmente la propia señora Vázquez desistió de su demanda, sin perjuicio. Expone en su favor también que en sus treinta años de gestión profesional no se ha presentado en su contra otra querella.

Tomando en consideración estos factores, según lo hemos hecho en otros casos,[5] consideramos adecuado y justo suspender inmediatamente al Lcdo. Adalberto Fernández Díaz por el término de un mes del ejercicio de la profesión. Este término comenzará a transcurrir a partir de la notificación personal de esta Opinión Per Curiam y Sentencia.

Se le impone el deber al Lcdo. Adalberto Fernández Díaz de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos el cumplimiento con lo anterior dentro del término de 30 días, a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Se dictará sentencia de conformidad.

---

[5] Véase, *In re: Arroyo Rivera, supra,* a la pág. 361 y casos allí citados.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*


Adalberto Fernández Díaz

CP-2005-16


SENTENCIA


En San Juan, Puerto Rico, a 21 de agosto de 2007.


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, se dicta sentencia decretando la suspensión inmediata del ejercicio de la abogacía por el término de un mes al Lcdo. Adalberto Fernández Díaz. Este término comenzará a contarse a partir de la notificación personal de la presente Opinión Per Curiam y Sentencia.


Se impone a éste el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos el cumplimiento con lo anterior dentro del término de 30 días, a partir de la notificación de esta Opinión Per Curiam y Sentencia.


Se ordena además que esta Opinión Per Curiam y Sentencia sea notificada personalmente al Lcdo. Adalberto Fernández Díaz.


Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri hace constar lo siguiente: "El Juez Asociado señor Fuster Berlingeri está conforme con el análisis del Tribunal en este Per

Curiam, pero disiente en cuanto a la sanción que se impone. Vista la totalidad de las circunstancias, limitaría la sanción a una censura enérgica". La Jueza Asociada señora Rodríguez Rodríguez concurre sin opinión escrita.


                                    Aida Ileana Oquendo Graulau
                                     Secretaria del Tribunal Supremo